**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

EDWARD PERKOWSKI,

                            Plaintiff,                           **MEMORANDUM**
                                                                          **AND ORDER**

         - against -                                       CV 18-5480 (JMA) (AKT)

THE TOWN OF BROOKHAVEN,
THE BROOKHAVEN TOWN BOARD,
SUPERVISOR EDWARD P. ROMAINE,
COUNCILWOMAN JANE BONNER, and
ROBERT INCAGLIATO *Senior Building Inspector*,

                              Defendants.
----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    <u>P</u>RELIMINARY <u>S</u>TATEMENT

        Plaintiff Edward Perkowski commenced this civil rights action, pursuant to 42 U.S.C.

§ 1983, against Defendants the Town of Brookhaven (the "Town"), the Brookhaven Town Board

(the "Town Board"), Supervisor Edward P. Romaine, Councilwoman Jane Bonner, and Robert

Incagliato (collectively, the "Defendants"), alleging violations of his constitutional rights arising

out of the condemnation of his home.  *See generally* Complaint ("Compl.") [DE 1].  Presently

before the Court are the parties' cross-motions for summary judgment.  *See* Defendants' Notice

of Motion [DE 26]; Plaintiff's Notice of Cross-Motion [DE 30].[1]  The parties have consented to

this Court's jurisdiction for purposes of deciding their motions pursuant to 28 U.S.C. § 636(c).

---

       [1]      The Court points out that both of the parties' notices of motion were incorrectly filed.  Defendants filed their motion for summary judgment as a "motion to dismiss" and Plaintiff filed his cross-motion, which also serves as his opposition to Defendants' motion, as a "reply."  *See* DE 26; DE 30.

*See* DE 19.  For the reasons which follow, Defendants' motion is GRANTED, in part, and DENIED, in part.  Plaintiff's cross-motion is DENIED in its entirety.

II.  <u>BACKGROUND</u>

    A.  **Deficiencies in the Parties' Motion Papers**

Local Civil Rule 56.1(a) provides that "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement may constitute grounds for denial of the motion."  Local Civil Rule 56.1(b) provides that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."

Here, neither the Rule 56.1 Statement submitted by Defendants in support of their motion nor the Rule 56.1 Statement filed by Plaintiff in support of his cross-motion complies with the Local Rules.  Most glaringly, neither side has cited its claimed support from the record for the purported undisputed fact being asserted.  For example, of the 40 assertions in Defendants' Rule 56.1 Statement, only four contain citations to a specific page in an exhibit, whereas six other assertions contain citations to an exhibit generally.  The remaining assertions do not contain any citations to the record.  On the other hand, Plaintiff's Rule 56.1 Statement (1) does not correspondingly respond to any of Defendants' assertions, (2) contains 21 assertions with only four which include citations to evidence in the record, and (3) includes multiple paragraphs

which are actually arguments advanced by counsel—and not factual averments.  Defendants did not even attempt to file a reply Rule 56.1 Statement.

"The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, and 'to assist the court in determining which facts are genuinely undisputed.'" *NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, No. 07 CIV. 3378, 2007 WL 4233008, at *1 (S.D.N.Y. Nov. 30, 2007) (quoting *Madison Maidens, Inc. v. Am. Mfrs. Mut. Ins. Co.,* No. 05 Civ. 4584, 2006 WL 1650689, at *2 (S.D.N.Y. June 15, 2006)).  The failure of counsel to comply with their respective obligations under the EDNY Local Rules substantially hampers the Court's effort in attempting to resolve the pending motions.  Local Civil Rule 56.1(c) is clear that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party *will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party*." (emphasis added). There is no ambiguity in this provision.  "Where the opposing party fails to provide a separate statement containing factual assertions, the Court is free to disregard any assertions made by the opposing party."  *Myers v. Lennar Corp.*, No. 08-CV-2799 (JFB) (WDW), 2010 WL 5491112, at *1 n.1 (E.D.N.Y. Dec. 30, 2010) (citing *Watt v. New York Botanical Garden*, No. 98 Civ. 1095 (BSJ), 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000)).  However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citing *Wight v. Bankamerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000)).

The deficiencies in the Defendants' motion and Plaintiff's cross-motion would typically result in the denial of both motions on procedural grounds.  Albeit reluctantly, however, the

Court in its discretion and in the interest of judicial economy will consider the merits of both motions.  To that end, the Court has conducted its own independent review of the record, as well as the parties' competing Rule 56.1 Statements and the exhibits which each side has submitted. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding that a district court may "opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file [ ] a statement [of fact]") (quoting *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir. 2000)).  From these documents, the Court has determined a brief factual background which it considers to be undisputed, except where otherwise noted.  The Court will construe these facts in the light most favorable to the Plaintiffs as the non-moving party.  *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007); *Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001); *Coastal Pipeline Prod. of New York v. Gonzales*, No. 04 CIV. 8252, 2006 WL 473883, at *4 (S.D.N.Y. Feb. 28, 2006).

## B.    Factual Background

Plaintiff was a tenant at 22 Miller Place Middle Island Road in Mount Sinai, New York (the "Premises").  *See* Defs.' SOMF ¶ 4; Pl.'s SOMF ¶ 7.  On June 16, 2016, the Suffolk County Police Department ("SCPD") executed a search warrant on the Premises and arrested one of Plaintiff's children who also lived there.  *See* Defs.' SOMF ¶¶ 6, 14.  After executing its warrant, SCPD asked the Town to come to the Premises and assess the property's condition.  *Id.* ¶¶ 6-7. [2] On behalf of the Town, Robert N. Incagliato, a Senior Building Inspector, and Patrick Campbell, a Code Enforcement Officer, went to the Premises.  *Id.* ¶¶ 8(a), (b).  Upon their arrival,

---

[2]        Plaintiff disputes that the SCPD invited Defendants to the Premises.  *See* Pl.'s SOMF ¶ 9.

Defendants Incagliato and Campbell took a number of photographs which showed that there was a motorcycle in the basement as well as gas cans, a lawn mower, and a chain saw next to the boiler.  *See id.* ¶¶ 10-11; Photographs, annexed as Defendants' Exhibit "F" [DE 26-8].  Due to the condition of the Premises, the Town condemned it.  *See* Defs.' SOMF ¶ 12.  Plaintiff allegedly kept all of his "worldly possessions" at the Premises which included jewelry, clothing, furniture, electronics, $12,000 worth of United States Savings Bonds, and $7,000 in cash.  *See* Compl. ¶¶ 33-36.  However, when Plaintiff returned to the Premises after it was condemned, he claims that all of his possessions were missing or destroyed and that he was unable to recover any money or property.  *See id.* ¶¶ 59-62.

The Complaint asserts four causes of action -all - difficult to discern because they are labeled solely as "violation of civil rights . . . pursuant to the Fourth and Fourteenth Amendments".  *See id.* ¶¶ 78-96.  Nevertheless, the Court distills the Plaintiff's claims as follows:  (1) Defendants entered and conducted a search of the Premises without a warrant or any justification in violation of the Fourth Amendment, *id.* ¶¶ 78-80; (2) Defendants committed an unreasonable seizure of the Premises by condemning it, *id.* ¶¶ 81-86; (3) Defendants committed an unreasonable seizure of the Plaintiff's personal possessions at the Premises, *id.* ¶¶ 87-91; and (4) Defendants failed to comply with Chapter 73 of the Brookhaven Town Code, which implements procedural protections necessary for condemnations, and deprived Plaintiff of due process pursuant to the Fourteenth Amendment, *id.* ¶¶ 92-96.

### C.    Procedural Background

The instant case was commenced on September 28, 2018 with the filing of the Complaint.  *See generally* Compl.  The Defendants filed their Answer on November 8, 2018.

*See generally* Answer [DE 8].  The parties then submitted separate pre-motion conference requests to Judge Azrack for purposes of filing motions for summary judgment.  *See* DE 16; DE 17.  Following a pre-motion conference with Judge Azrack, the parties consented to this Court's jurisdiction to enter a final order on their cross-motions.  *See* DE 19.

### D.     The Parties' Positions

Defendants' motion does not address Plaintiff's claims individually, but rather argues generally that the Complaint should be dismissed in its entirety.  Defendants maintain that the Town entered the Premises at the request of the SCPD and that due to the unlivable condition of the Premises, an emergency existed which required condemnation, thereby deeming any pre-deprivation process impractical.  *See* Defs.' Mem. at 7-8, 10.  Defendants then argue that each of the individual Defendants are protected by qualified immunity.  *See id.* at 9-10.  According to the Defendants, Town Supervisor Edward Romaine and Councilwoman Jane Bonner "had nothing to do with the condemnation."  They also assert that Incagliato "acted reasonably and in good faith in condemning the property," thus entitling these individuals to qualified immunity *Id.* at 9-10.

Plaintiff has cross-moved for summary judgment "on the issues of Trespass and Taking of his personal property without Due Process of Law."  *See* Pl.'s Mem. at 4.  It should be noted that Plaintiff has not asserted a cause of action for trespass, but appears to argue that he is entitled to summary judgment on his claims pursuant to the Fourth Amendment because Defendants did not have a valid warrant when they entered the Premises.  *See id.* at 8-11.  Plaintiff then addresses his claims that are categorized as "seizure/condemnation/taking" under the "4th & 14th Amendments."  *Id.* at 12-27.  In this section, Plaintiff primarily argues that the SCPD did not contact the Town to come to the Premises, that the Premises was in livable condition, and that no emergency existed to justify Defendants' condemnation of the Premises

6

without affording Plaintiff prior notice. *See id.* Lastly, Plaintiff contends that Defendant Incagliato is not entitled to qualified immunity under the circumstances here. *Id.* at 28. Plaintiff does not advance an argument as to whether Defendants Romaine and Bonner should be afforded qualified immunity.

In their reply/opposition to Plaintiff's cross-motion, the Defendants argue that they were on the Premises legally because they went at the behest of the SCPD, who had executed a search warrant at the Premises earlier that day. *See* Defs.' Reply at 1, 3. According to the Defendants, the SCPD was responsible for seizing Plaintiff's personal possessions -- not the Town. *See id.* at 1-2, 5. Defendants also dispute Plaintiff's contention that the Premises was habitable, asserting that the "direct evidence and photographs annexed to the original moving papers . . . show[] a dangerous and dilapidated structure." *Id.* at 3. Ultimately, Defendants reiterate their contention that the Premises was condemned "on an emergency basis" and that the "actual homeowner was notified of the emergency closing" in advance. *Id.* at 4-5.

Plaintiff's reply focuses on three issues: (1) there is no evidence that SCPD asked for the Town to go to the Premises; (2) there is no evidence that the SCPD seized items from the Premises; and (3) the record is devoid of any evidence that the Premises was condemned on an emergency basis. *See* Pl.'s Reply at 1-5. For these reasons, Plaintiff maintains that he is entitled to summary judgment on the issue of "trespass." *Id.* at 5.

## III.   STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 108 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F. 3d 130, 137 (2d Cir. 2008). To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in the light most favorable to the non-moving party. *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F. 3d 69, 75 (2d Cir. 2005). In dispatching this task, a court need only consider admissible evidence. *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *Hilaire*, 54 F. Supp. 3d at 251.

Where the movant shows a *prima facie* entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006); *Miller v. Nassau Health Care Corp.*, No. 09-CV-5128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012). "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Salahuddin*, 467 F. 3d at 273; *see McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor."). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Dobbs v. Dobbs*, No. 06-CV-6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The

8

Court's goal should be to isolate and dispose of factually unsupported claims.") (internal

quotation marks omitted).

## IV.   DISCUSSION

At the outset, the Court reiterates that the parties' insufficient motion papers have made it

very difficult for the Court to discern and assess the parties' arguments and the claims for which

they seek affirmative relief.  Notwithstanding that fact, and having thoroughly reviewed

counsels' submissions, the Court distills the following issues:  (1) whether Defendants lawfully

entered and searched the Premises on June 16, 2016; (2) whether Defendants lawfully seized the

Plaintiff's personal property or the Premises; (3) whether the Property was condemned without

Due Process having been afforded to Plaintiff; and (4) whether the individual Defendants are

entitled to qualified immunity.[3]

### A.   Section 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the

---

[3]      Counts Three and Four of the Complaint assert Fourth and Fourteenth
Amendment claims related to the seizure of the Plaintiff's personal property and the Premises.
These two claims also include single sentence threadbare allegations which state that Defendants
committed a "taking" of these property interests.  *See* Compl. ¶¶ 84, 90.   Such an allegation
would pertain to a purported violation of the Fifth Amendment's "takings" clause, a
constitutional provision that is notably absent from the Complaint as well as from any of the
parties' motion papers.  The Plaintiff's cross-motion, which also serves as his opposition to the
Defendants' motion, only discusses his Fourth Amendment claims and the procedural due
process protections purportedly not afforded to him before the Premises was condemned.  In
light of the fact that the Defendants have moved for summary judgment against the entirety of
the Complaint, to the extent the Plaintiff's claims could possibly be construed as arising under
the Fifth Amendment, the Court deems such claims abandoned. *See Peters v. City of New York*,
No. 14-CV-1361, 2015 WL 3971342, at *1 (E.D.N.Y. June 30, 2015) ("Plaintiffs do not oppose
defendants' motion as to those claims, and those claims are dismissed as abandoned." (citing
Newton v. City of New York, 738 F.Supp.2d 397, 416 n.130 (S.D.N.Y.2010))).

> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity or other proceeding for redress.

42 U.S.C. §1983.  Section 1983 does not create any independent substantive rights but rather is a

vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v.*

*Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808,

816, 105 S.Ct. 2427, 85, 27 L.Ed.2d 791 (1985), *abrogated on other grounds recognized by*

*Collins v. City of San Diego*, 841 F.2d 337 (9th Cir. 1988)); *Sykes v. James*, 13 F.3d 515, 519

(2d Cir. 1993).  For a plaintiff to prevail on a § 1983 claim, he or she must demonstrate: "(1) the

deprivation of any rights, privileges, or immunities secured by the Constitution and its laws;

(2) by a person acting under the color of state law."  *Hawkins v. Nassau Cty. Corr. Facility*, 781

F.Supp.2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. §1983).

### 1.    *Unlawful Entry*

The primary issue in both Plaintiff's and Defendants' motions for summary judgment is

whether the Defendants' lawfully entered the Premises.  The Fourth Amendment guarantees that:

> [t]he right of the people to be secure in their persons, houses, papers,
> and effects, against unreasonable searches and seizures, shall not be
> violated, and no Warrants shall issue, but upon probable cause,
> supported by Oath or affirmation, and particularly describing the
> place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (noting that the Fourth

Amendment's search and seizure provisions are applicable to the States through the Fourteenth

Amendment's Due Process Clause").  "The Fourth Amendment's warrant requirement protects

one's privacy interest in home or property.  Absent exigent circumstances or some other

exception, [State actors] must obtain a warrant before they enter the home to conduct a search or

otherwise intrude on an individual's legitimate expectation of privacy."  *Wilson v. Sessoms-*

*Newton*, No. 14-CV-00106, 2017 WL 3575240, at *5 (E.D.N.Y. Aug. 17, 2017) (quoting *U.S. v. Gori*, 230 F.3d 44, 50 (2d Cir. 2000)).

Defendants submit that they were legally at the Premises because an emergency existed, namely, "a search warrant had been executed . . . and the [SCPD] brought the Town in as a result of the condition of the property." *See* Defs.' Mem. at 7; Defs.' Reply at 4. On the other hand, Plaintiff claims that the Town never obtained a search warrant, was not invited to the Premises by the SCPD, and did not have consent to enter the Premises. *See* Pl.'s Mem. at 9-10. The search warrant executed by the SCPD permitted any member of the SCPD and the Department of Justice Drug Enforcement Administration to search the premises for evidence of an illicit drug business. *See* Search Warrant, annexed as Exhibit "A" to Defs.' Reply [DE 27 at 8-9]. Although Defendant Incagliato testified that a police officer told him that he was "on the search warrant," *see* Incagliato Tr. at 30, the search warrant does not name the Town nor any of the Defendants as individuals who were permitted to execute the search warrant, and this fact is not disputed by the parties. *See* Search Warrant at 1-2. Next, although Plaintiff contends that Defendants did not enter the Premises at the request of the SCPD, Plaintiff has cited deposition testimony by Defendant Incagliato and Investigator Campbell which contradicts Plaintiff's argument and states that Town officials were asked by the police to go to the Premises. *See* Pl.'s Mem. at 9; Deposition Transcript of Patrick Campbell ("Campbell Tr.") [DE 30-5] at 36 ("We were requested to assist the Suffolk County Police Department."); Deposition Transcript of Robert Incagliato ("Incagliato Tr.") [DE 26-7] at 17-18 ("If I remember correctly, I believe the police called us [to the premises].").

Notwithstanding these assertions, Defendants have not cited a single case which has held that a third-party's entry into a home was deemed lawful because the third-party was invited to

the property by law enforcement officials who previously obtained and executed a search warrant. Although case law suggests law enforcement officials may utilize third-parties to assist in the execution of a search warrant in certain circumstances, Defendants have not argued that they carried out such a function here. *See, e.g.*, *Wilson v. Layne*, 526 U.S. 603, 614 (1999) ("[I]t is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in the aid of the execution of the warrant."); *Mason v. Barbieri*, 338 Fed. App'x 94, 95-96 (2d Cir. 2009) ("[T]he presence of a third party who is *assisting authorized officers in their search* does not violate the Fourth Amendment's reasonableness requirement." (quoting *Ayeni v. Mottola*, 35 F.3d 680, 687 (2d Cir. 1994) (emphasis in original))); *Kanciper v. Lato*, No. 13-CV-0871, 2016 WL 11507274, at *15 (E.D.N.Y. Dec. 1, 2016) ("[I]t is constitutionally permissible for third parties . . . to be present during the execution of a warrant, so long as they 'directly aided in the execution of the warrant, . . . or further[ed] the purposes of the search.'" (quoting *Wilson*, 526 U.S. at 611-12)). Moreover, Defendants concede that the SCPD did not contact them until after the warrant was executed. *See* Defs.' Mem. at 4 ("After the execution of the search warrant, the Police asked the Town of Brookhaven to send a building inspector to assess the condition of the house."). In light of this framework, Defendants must demonstrate that an exception to the warrant requirement existed to justify their entry onto the Premises.

The only exception to the warrant requirement that the Defendants maintain applies here is the existence of exigent circumstances.[4]  "The primary inquiry in determining whether exigent

---

[4]        Notably, the Defendants do not attempt to argue that the "special needs" exception to the warrant requirement applies here. *See City of Los Angeles Calif. v. Patel*, 576 U.S. 409, 419-20 (2015). Pursuant to this exception, a warrantless search may be reasonable where special needs make the warrant requirement impracticable and where the "primary purpose" of the search is distinguishable from the general interest in crime control. *Id.* at 420.

12

circumstances justified a warrantless entry is 'whether law enforcement agents were confronted by an urgent need to render aid or take action.'" *Patrizio v. Nelson*, No. 14-CV-7497, 2016 WL 3582047, at *7 (E.D.N.Y. June 28, 2016) (quoting *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990)). This determination is fact-specific and turns on the "totality of the circumstances confronting law enforcement agents in the particular case." *Id.* Here, Defendants claim that the SCPD told them that "there [was] an emergency" and that the Town "has the right to take immediate action with regard to protecting the public." *See* Defs.' Mem. at 8; *see also* Defs.' Reply at 4 ("[T]he police brought the Town in as a result of the condition of the property."). More specifically, Defendants submit that "there were clear and eminent [*sic*] fire hazards" and that the "house was in an unlivable condition." *See* Defs.' Mem. at 8. However, the only evidence to which Defendants refer the Court in support of that assertion is a series of photographs which are mostly too dark to discern, are not labeled, and have no descriptions. *See generally* Photographs [DE 26-8]. It is not clear from the record whether the SCPD told Defendants of the existence of the purported fire hazards and uninhabitability of the home prior to Defendants' entry onto the Premises, or if this information was discovered by Defendants after they entered the home.

However, upon the Town's arrival at the Premises, Defendant Incagliato testified that the structure of the home "looked sound" and that there was no imminent danger of the building collapsing. *See* Incagliato Tr. at 41. In addition, although Plaintiff was a tenant of the Premises by virtue of a lease, Defendants have not even argued that there was a possible building code violation that they were investigating in order to justify their entry. Defendant Incagliato had not even checked the certificate of occupancy for the Premises prior to his arrival, nor had he ever been to the property prior to June 16, 2016. *See id.* at 16, 47. In reviewing the record, the Court

also notes that Investigator Campbell did go to the Premises prior to June 16, 2016 because the Town "received numerous complaints about this dwelling; rental[] disturbances which are a police matter, unregistered vehicle, litter, [and] property maintenance issues."  Campbell Tr. at 20.  Despite receiving numerous complaints and taking several trips to the Premises, Campbell never wrote any summonses.  *Id.* at 21.  He even determined that there were Brookhaven Town Code violations, primarily due to "unregistered cars."  *See id.* at 24.  However, Campbell could not recall if he issued any warnings or saw the purported violations rectified, but noted that the property went into foreclosure prior to June 2016.  *See id.* at 24-25.[5]

Lastly, Plaintiff has also pointed to evidence in the record which indicates the Defendants may have condemned the Premises not due to an emergency, but rather due to the fact that its owner Wayne Duchnowski, who happens to be a Town employee, wanted the Plaintiff out of the home so he could sell it at foreclosure.  *See* Pl.'s Mem. at 27; Campbell Tr. at 80-81.  Campbell was aware of Duchnowski's employment with the Town and even noted that he did not issue previous violations against the Premises because it was in foreclosure.  *See* Campbell Tr. at 81.  As such, the Court finds that it is a question for the jury whether the Defendants were motivated to enter the Premises and condemn it due to emergency circumstances, or for some other reason (*i.e.*, to prevent Plaintiff's continued occupancy so that the Premises could be sold at foreclosure).

---

[5]   The Court also notes that neither the Defendants nor Plaintiff have cited the administrative search exception to the warrant requirement, which might well be applicable to the instant case.  The administrative search exception provides that "absent consent, exigent circumstances or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker."  *Mamakos v. Town of Huntington*, No. 16-CV-5775, 2017 WL 2861719, at *8 (E.D.N.Y. July 5, 2017).

For these reasons, the evidence which Defendants have presented to the Court is insufficient to carry their burden to demonstrate that the entry onto the Premises was constitutional.  The Court also finds that a genuine issue of material of fact exists as to whether exigent circumstances were present to justify Defendants' warrantless entry onto and subsequent search of the Property.  Accordingly, Defendants' motion for summary judgment and Plaintiff's cross-motion for summary judgment as to Count One of the Complaint are DENIED.

### 2. *Seizure*

Counts Two and Three of the Complaint are conflated constitutional claims which relate to the seizure of the Premises and the Plaintiff's personal possessions located within it.  *See* Compl. ¶¶ 81-91.  Pursuant to the Fourth Amendment, "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *See Harrell v. City of New York*, 138 F. Supp. 3d 479, 488 (S.D.N.Y. 2015) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  "[I]n 'the ordinary case,' seizures of personal property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless . . . accomplished pursuant to a judicial warrant,' issued by a neutral magistrate after finding probable cause." *Illinois . McArthur*, 531 U.S. 326, 330 (2001) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)).  The "ultimate standard" of the Fourth Amendment is reasonableness and a warrantless seizure can be valid under certain circumstances.  *See Harrell*, 138 F. Supp. 3d at 489.

In the context of the Defendants' entry onto and subsequent search of the Premises, the Court has already determined that there are disputed issues of fact regarding the reasonableness of such a search in the absence of a warrant -- whether exigent circumstances existed.  The Court reaches the same conclusion here regarding the reasonableness of the seizure of the Plaintiff's

personal possessions and the Premises itself.  Moreover, the Defendants argue that the Plaintiff's

personal possessions were seized by the SCPD -- not the Town.  The only "evidence"

Defendants point to in support of this assertion is a news article from the Internet which states

that various firearms, drugs, knives, ammunition, and $42,940 in cash, among other things, were

seized from the Premises as the SCPD was executing its warrant.  *See* Defs.' Mem. at 7 (citing

Exhibit "K" [DE 26-5]).  This article is clearly being offered for the truth of the matter asserted,

is inadmissible hearsay, and cannot be considered by the Court.  Whether the SCPD, the Town,

or some other person or entity was responsible for the seizure or "taking" of any of the Plaintiff's

personal property remains an issue of fact for a jury to determine.  Accordingly, the cross-

motions for summary judgment are DENIED as to Counts Two and Three.

### 3.    *Due Process*

A procedural due process claim under the Fourteenth Amendment for purposes of § 1983

is comprised of two elements:  "(1) the existence of a property or liberty interest that was

deprived and (2) deprivation of that interest without due process."  *Bryant v. N.Y. State Educ.*

*Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).  Plaintiff's due process claim, Count Four, is primarily

based upon the allegations that the Town Defendants did not comply with Chapter 73 of the

Brookhaven Town Code when they condemned the Premises and took the Plaintiff's personal

property.  *See* Compl. ¶¶ 92-96.  The relevant provisions of the Brookhaven Town Code provide:

> **§ 73-14 Order to vacate premises:**  When there is imminent
> danger of failure or collapse of a building or structure which
> endangers life, or when any structure or part of a structure has
> fallen and life is endangered by the occupation of the structure, or
> when there is actual or potential danger to the building occupants
> or those in the proximity of any structure because of explosives,
> explosive fumes or vapors or the presence of toxic fumes, gases or
> materials, or operation of defective or dangerous equipment, the
> occupants shall vacate the premises forthwith. There shall be
> posted at each entrance to such structure a notice reading as

16

follows: "This Structure is Unsafe and its Occupancy Has Been Prohibited by the Code Enforcement Official." It shall be unlawful for any person to enter such structure except for the purpose of securing the structure, making the required repairs, removing the hazardous condition or of demolishing the same.

**§ 73-15 Corrective action by Town:**  When there is imminent danger of failure or collapse of a building or structure which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure, or when there is actual or potential danger to the building occupants or those in the proximity of any structure because of explosives, explosive fumes or vapors or the presence of toxic fumes, gases or materials, or operation of defective or dangerous equipment, the Chief Building Inspector or Town Attorney, on advice of the Engineer, may take such immediate action as is necessary to protect life and alleviate the danger presented, and to render the building or structure temporarily safe, including, but not limited to, emergency repair or removal of all or part of the building or structure, including foundations, the installation of fencing, and boarding and securing, without notice or hearing to the property owner.

**§ 73-16 Report of action; further remedies:**  Following action taken pursuant to §§ 73-14 and 73-15 of this chapter, the Chief Building Inspector or Engineer shall prepare and deliver a report of such action to the Town Board, and, if the building or structure remains unsafe, commence proceedings under Article I of this chapter to cause said building or structure to be rendered safe. The Chief Building Inspector shall notify the property owner of the emergency actions taken pursuant to the provisions of § 73-15.

*See* Town of Brookhaven Code, Art. III, §§ 73-14 to 73-16.  However, it is well-settled law that "violations of state law procedural requirements do not alone constitute deprivation of due process since 'federal constitutional standards rather than state law define the requirements of procedural due process.'" *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990)); *see Zahra v. Town of Southold*, 48 F.3d 674, 682 (2d Cir. 1995) ("Our precedents have firmly established that the mere violation of a state law does not automatically give rise to violation of federal constitutional

17

rights . . . ." (citing *Yale Auto Parts, Inc. v. Johnson*, 758 F. 2d 54, 58-59 (2d Cir. 1985))).

"These infractions may give rise to state law claims, but do not, by themselves, constitute due

process violations of a constitutional nature.  Thus, a § 1983 claim brought in federal court is not

the appropriate forum to urge violations of . . . state law[.]"  *Id.*  "[T]o prevail on a § 1983 claim,

the allegations asserted must constitute violations of constitutional due process standards."  *Id.*

(citing *Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001)).

In a situation where, as here, "a plaintiff alleges a deprivation pursuant to an established

state procedure . . . the state must ordinarily provide a pre-deprivation hearing.  *Ferreira v. Town

of East Hempstead*, 56 F. Supp. 3d 211, 226 (E.D.N.Y. 2014).  However, "[t]he existence of an

emergency may . . . excuse the need to provide a predeprivation hearing."  *Id.* at 227 (citing

*Catanzaro v. Weiden*, 188 F.3d 56, 63-64 (2d Cir. 1999)).  "Absent such evidence, . . . the failure

to afford a pre-deprivation hearing would constitute a violation of the constitutional right to

procedural due process in this case."  *Ferreira*, 56 F. Supp. 3d at 228 (citing *Burtnieks v. City of

New York*, 716 F.2d 982, 987-89 (2d Cir. 1983)).  Defendants submit that the condemnation of

Plaintiff's home was done on an emergency basis, the actual owner of the Premises received

proper notice of the condemnation, and that the owner had the opportunity to contest the

condemnation, but elected not to do so.  *See* Defs.' Reply at 5.  Plaintiff on the other hand

contends that he was forced out of his home and unable to collect any of his belongings without

being provided any advance notice.  *See* Pl.'s Mem. at 26.

There are multiple issues which preclude summary judgment for either side on Plaintiff's

due process claim.  To the extent this claim is based upon the Defendants' alleged taking of

Plaintiff's personal property, the parties vigorously dispute whether it was the Defendants, the

SCPD, or another entity responsible for doing so.  Sorting out this dispute is best left to a jury

18

with respect to determining the Town's liability, if any, to Plaintiff on this claim.  Moreover, the

Court has already found that issues of fact exist as to whether the entry of and subsequent

condemnation of the Premises by Defendants was done on an emergency basis.  Consequently,

these same issues of fact preclude a determination of summary judgment in Defendants' favor as

to Plaintiff's due process claim.  In the absence of an emergency, the Defendants may have been

required to afford Plaintiff some sort of pre-deprivation process before the Premises was

condemned or the Plaintiff's personal property was taken.  *Morizio*, 2015 WL 13721649, at *3

(finding plaintiff was still entitled to "some kind of hearing" prior to being deprived of a property

interest where plaintiff was allegedly deprived of property pursuant to established state

procedures).

Accordingly, the cross-motions for summary judgment are DENIED as to Count Four of

the Complaint.

### B.     Qualified Immunity

"Qualified immunity protects government officials from civil damages liability 'insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'"  *Jackson v. Tellado*, 236 F. Supp. 3d 636, 652

(E.D.N.Y. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Qualified immunity

is an affirmative defense that a defendant bears the burden of proving on a motion for summary

judgment.  *See Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012).  "[A] decision dismissing a

claim based on qualified immunity at the summary judgment stage may only be granted when a

court finds that an official has met his or her burden demonstrating that no rational jury could

conclude '(1) that the official violated a statutory or constitutional right, and (2) that the right

was clearly established at the time of the challenged verdict." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

Defendants argue that the three individual Defendants, Romaine, Bonner, and Incagliato are entitled to qualified immunity. *See* Defs.' Mem. at 9-10. In Plaintiff's opposition to Defendants' motion, he argues only that Defendant Incagliato is not entitled to qualified immunity. *See* Pl.'s Opp'n at 28. Plaintiff does not advance an argument as to whether Defendants Romaine and Bonner are entitled to qualified immunity in either his opposition/cross-motion or reply. Plaintiff's lack of challenge to Defendants' argument that Romaine and Bonner are protected by qualified immunity brings the Court to conclude that Plaintiff has abandoned any argument that these two Defendants are not protected by qualified immunity. *See Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 385 (E.D.N.Y. 2014) ("[A]rguments not made in opposition to a motion for summary judgment are deemed abandoned." (quoting *Plahutnik v. Daikin Am., Inc.*, 912 F. Supp. 2d 96, 104 (S.D.N.Y. 2012)) (alteration in original)); *see also Nickey v. Coward*, No. 11 Civ. 3207, 2016 WL 324959, at * (E.D.N.Y. Jan. 26, 2016) ("In this case, the plaintiff did not respond to the defendants' argument that no reasonable jury could find the defendants liable for conversion because the plaintiff's husband signed a document stating that she did not want her jewelry back. Nor did the plaintiff oppose the defendants' assertion that her state law claims are encompassed in the Section 1983 claims for false arrest and malicious prosecution. Finally, the plaintiff did not present any evidence to counter the defendants' contention that there is 'absolutely no evidence' that the defendants' conduct was sufficiently 'outrageous.' Because the plaintiff did not address these arguments, the court could have granted summary judgment on the state law claims."). Accordingly, the Court finds that Edward Romaine and Jane Bonner are entitled to qualified

immunity and summary judgment is GRANTED as to Romaine and Bonner. *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (citing *Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998)), *order clarified*, No. 01-CV-5750, 2003 WL 21781941 (E.D.N.Y. July 29, 2003). As such, Romaine and Bonner are dismissed from this action.

Regarding Defendant Incagliato, given the disputed facts whether exigent circumstances existed so that he and the Town could conduct a search of the Premises, the Court finds summary judgment on qualified immunity grounds is not warranted under these circumstances. *See Patrizio*, 2016 WL 3582047, at *11 ("Qualified immunity may not shield defendants from damages for unlawful entry into one's home, which is in clear violation of the Fourth Amendment."); *Mangino v. Incorporated Village of Patchgoeu*, 814 F. Supp. 2d 242, 261 (E.D.N.Y. 2011) ("Given the disputed facts regarding whether [the defendant] fabricated the exigency so that he and the Fire Department could conduct an unconstitutional search, summary judgment on qualified immunity grounds on this claim is unwarranted under the circumstances of this case."). Accordingly, Defendants' motion for summary judgment on qualified immunity grounds is DENIED as to Inspector Incagliato.

## V.    CONCLUSION

The Defendants' motion for summary judgment is GRANTED, in part, to the extent the claims against Defendants Romaine and Bonner are dismissed on qualified immunity grounds. The remainder of Defendants' motion is DENIED and the Plaintiff's cross-motion is DENIED in its entirety.

**SO ORDERED.**


Dated: Central Islip, New York
      September 27, 2021                         /s/ A. Kathleen Tomlinson
                                                A. KATHLEEN TOMLINSON
                                                U.S. Magistrate Judge