UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD PERKOWSKI<br><br>Plaintiff;<br><br>v.<br><br>THE TOWN OF BROOKHAVEN and ROBERT INCAGLIATO,<br><br>Defendants. | 18-CV-5480 (NRM) (LGD)<br><br>MEMORANDUM & ORDER |

NINA R. MORRISON, United States District Judge:

Now pending before the Court is Plaintiff Edward Perkowski's motion for attorney's fees pursuant to 42 U.S.C. § 1988(b), in which he seeks a total award of $322,824.93. The Court has carefully considered Plaintiff's motion, Defendants' response, as well as supplemental briefs that the parties submitted after settlement discussions before Magistrate Judge Dunst. Plaintiff's motion is GRANTED IN PART and DENIED IN PART. The Court awards Plaintiff $210,488.43 in fees and costs.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Edward Perkowski ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1983 alleging violations of his Fourth and Fourteenth Amendment rights by defendant Robert Incagliato, a building inspector who worked for the Town of Brookhaven ("the Town"), also a defendant in this action. *See* ECF No. 1. Plaintiff

1

alleged that Incagliato violated Plaintiff's Fourth Amendment right to be free from unreasonable government searches when he entered Plaintiff's home without a warrant on June 16, 2016, after Suffolk County police (who themselves had a warrant) had executed a search on the property and reportedly informed Incagliato that, in their view, the property posed safety concerns that merited a building inspector's consideration. *See id.* at 9. Plaintiff also alleged that Incagliato's decision to condemn his home after a thirty-minute inspection—a home on which Plaintiff still had approximately seven years remaining on his ten-year lease— violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures of property. *Id.* at 10. He further alleged that Incagliato's failure to provide adequate pre-deprivation notice to Plaintiff of his home's seizure, or post-deprivation notice to contest the seizure, violated Plaintiff's Fourteenth Amendment due process rights. *Id.* at 10–11. Plaintiff sought both compensatory damages (in which he claimed, *inter alia*, that defendant Incagliato's actions were the proximate cause of the subsequent destruction and loss of all his personal property inside the home, some of which were family mementos with great sentimental value) as well as punitive damages. *Id.* at 12.

Plaintiff also brought a claim against the Town under a *Monell* liability theory. Although Plaintiff did not specifically plead a *Monell* theory of liability in his complaint, Defendants failed to move to dismiss the Town in their summary judgment motion, *see* ECF Nos. 26, 27, and Plaintiff's claims against the Town proceeded to trial. At trial, Plaintiff alleged that the Town was responsible for

Incagliato's violation of Plaintiff's Fourth Amendment right to be free from unlawful seizure because the Town had failed to adequately train its building inspectors and because Incagliato was a "final policymaker" for the Town with respect to building condemnations. *See, e.g.*, Minute Entry dated February 17, 2023.

Plaintiff's action proceeded to trial before a jury from February 13, 2023 to February 19, 2023. Both parties agreed that whether Incagliato was a "final policymaker" for the Town for *Monell* purposes was a question of law for the Court to decide, not the jury; in addition, Defendants moved for judgment as a matter of law under Fed. R. Civ. P. 50(a) on Plaintiff's failure-to-train claim. *See* Minute Entry dated February 16, 2023. After the parties rested and before the jury was charged, the Court granted Defendants' Rule 50(a) motion in part and dismissed Plaintiff's *Monell* claim against the Town of Brookhaven on Plaintiff's failure-to-train theory, but concluded as a matter of law that Incagliato was indeed a final policymaker for the Town of Brookhaven with respect to building condemnations, such that, if the jury concluded that Incagliato had violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures, the Town would also be liable for that violation. *See* Minute Entry dated February 17, 2023.

Before the jury was charged, the Court further narrowed the claims at issue with the consent of both parties. Plaintiff, recognizing that any potential damages for his Fourth Amendment seizure claim would be identical to those available for his Fourteenth Amendment due process claim, voluntarily dismissed the latter claim. *See* Minute Entry dated February 16, 2023. Defendants, for their part,

conceded that Plaintiff had proven as a matter of law that Incagliato violated Plaintiff's Fourth Amendment right to be free from an unreasonable search of his home because the trial record established that Incagliato did not enter Plaintiff's home pursuant to a judicially authorized warrant or a recognized exception to the warrant requirement.[1] *See* Minute Entry dated February 17, 2023. In its charge on February 17, 2023, the Court instructed the jurors that Plaintiff had proven as a matter of law that Incagliato was liable for violating Plaintiff's right to be free from unreasonable searches of his home, and that the jurors need only deliberate on the question of damages as to that claim.

The next day, the jury returned its verdict. On Plaintiff's unlawful search claim, the jury awarded Plaintiff $1 in nominal damages and no punitive damages. ECF No. 86 at 2. On Plaintiff's unlawful seizure claim, the jury found for Plaintiff, concluding that Incagliato had violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures. *Id.* at 1. The jury awarded Plaintiff $100,000 in compensatory damages for the unlawful seizure, but declined to award punitive damages. *Id.* The Court then issued the jury a special interrogatory at Defendants' request to aid the Court in its determination of Defendants' anticipated motion to dismiss the claims against Incagliato on the grounds of qualified immunity. *See*

---

[1] The Suffolk County police who executed the search on Plaintiff's home and arrested Plaintiff's sons did so pursuant to a warrant, but Incagliato was not named on that warrant. Plaintiff's son was charged but never convicted of a crime. Plaintiff did not dispute the validity of the warrant, but he argued, and Defendants agreed, that the warrant only covered actions taken by the Suffolk County police and did not authorize Incagliato to enter Plaintiff's home without Plaintiff's consent.

4

ECF No. 84. The jury returned the special interrogatory on the same day, concluding that Incagliato "reasonably believe[d], even if mistakenly" that an emergency justified his search of Plaintiff's home, and that he "reasonably believe[d], even if mistakenly," that his seizure of Plaintiff's home (via condemnation) was reasonable. *Id.* at 1.

Plaintiff, through his lead attorney Raymond Negron, moved for attorney's fees on April 13, 2023 pursuant to 42 U.S.C. § 1988(b). ECF No. 89. Plaintiff also sought fees for work expended by Peter Ausili, Mr. Negron's co-counsel during trial. Defendants filed their response to Plaintiff's motion on April 23, 2023. *See id.* The parties conducted post-trial settlement negotiations before Magistrate Judge Dunst that were partially successful: Defendants agreed to pay (and did pay) Plaintiff the full $100,001.00 judgment awarded by the jury and thereby waived any potential appeals, but the parties agreed to have this Court resolve Plaintiff's application for attorney's fees. *See* ECF No. 97. Plaintiff filed a supplemental letter brief regarding his motion for attorney's fees on June 28, 2023, asserting a revised fee calculation of $322,824.93. ECF No. 98. Defendant filed a response to Plaintiff's supplemental brief on July 14, 2023. ECF No. 99.

## ANALYSIS

### I. Legal Standard

"In a section 1983 action, the court has the discretion to award 'reasonable' attorneys' fees and costs to 'the prevailing party,'" pursuant to 42 U.S.C. § 1988(b), and a "'prevailing party' should ordinarily be awarded attorneys' fees unless 'special

5

circumstances' would render such an award unjust." *Anderson v. City of New York*, 132 F. Supp. 2d 239, 241 (S.D.N.Y. 2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). "The general purpose of fee-shifting statutes such as § 1988(b) is to permit plaintiffs with valid claims to attract effective legal representation and thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole." *Green v. Torres*, 361 F.3d 96, 100 (2d Cir. 2004) (citation and quotation marks omitted). *See also Quarantino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation.").

Courts in the Second Circuit use the "lodestar" method to ascertain what fees are reasonable in a civil rights action. *See Lawson ex rel. Torres v. City of New York*, 99-cv-10393, 2000 WL 1617014, at *1 (S.D.N.Y. Oct. 27, 2000). This method "calculates fees by using the product of the number of hours reasonably expended by each attorney and the reasonable hourly rate." *Id.* Plaintiff bears the burden of demonstrating both that the hourly rate he seeks is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Gavin-Mouklas v. Info. Builders, Inc.*, 97-cv-3085, 1999 WL 728636, at *2 (S.D.N.Y. Sept. 17, 1999) (citation omitted), and that the number of hours he expended was reasonable. *Lawson*, 2000 WL 1617014, at *1.

In calculating a reasonable rate, a court typically applies the "forum rule," which generally sets the "hourly rates employed in the district in which the

6

reviewing court sits" as a "presumptively reasonable fee." *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 290 (2d Cir. 2011) (citation omitted).  A court calculating the appropriate hourly rate for a lawyer in a particular case may also consider the following factors:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (citation omitted).

In calculating the number of hours that a plaintiff's attorney reasonably spent on a case, the court must exclude "excessive, redundant, or otherwise unnecessary" hours.  *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citation omitted).  In addition, rather than reducing a plaintiff's attorney's hours task-by-task, a court "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id.* (citation and quotation marks omitted).  The court also has "significant discretion" when determining the reasonableness of a plaintiff's attorney's purported expended hours "based on the scope and complexity of a case." *Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 204 (N.D.N.Y. 2019) (citation omitted).

7

## II. Application

The Court first considers what hourly rate would be reasonable for Mr. Negron and Mr. Ausili in this action. To start, Plaintiff argues that Mr. Negron and Mr. Ausili should each be awarded fees at a rate of $500 per hour. Defendants, for their part, argue that this rate is excessively high, in light of Mr. Negron's and Mr. Ausili's abilities, experience, and what they contend is the lack of complexity of the case. The Court agrees, in part, with Defendants, and shall therefore award Plaintiff attorney's fees at a rate of $350 per hour for both attorneys.

First, a rate of $350 per hour is presumptively reasonable in light of both the forum rule and Mr. Negron's and Mr. Ausili's experience and skill. *Cf. Division 1181 Amalgamated Transit Union v. D&A Bus Co., Inc.*, 270 F. Supp. 3d 593, 623 (E.D.N.Y. 2017) ("Having considered . . . this Circuit's adherence to the forum rule, the Court finds that a presumptively reasonable fee for [plaintiff's counsel] is $350.00 and $300.00 per hour respectively."); *JMC Restaurant Holdings, LLC v. Pevida*, 14-cv-6157, 2018 WL 4189730, at *4 (E.D.N.Y. June 20, 2018) ("Considering [plaintiff's counsel's] experience and applying the forum rule, the Court finds a reasonable plaintiff would pay a rate of $350/hour for his services, in light of other awards in this District for attorneys of similar experience.").

It was clear to this Court that Mr. Negron vigorously championed his client's claims over many years, prepared thoroughly for his evidentiary presentation at trial, was well-familiar with the factual record, and had a clear theory of the case with respect to Incagliato's individual liability (even if the jury ultimately did not,

8

in light of its answers to the Special Interrogatory, agree with Plaintiff's claim that these constitutional violations were deliberate or malicious). However, the Court concludes that a higher rate of $500, which is generally reserved for attorneys with special expertise in the relevant field, is not warranted here. *Cf. Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012) ("The highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields."). The Court appreciates that Plaintiff brought a somewhat unusual § 1983 case, but it cannot conclude that this action was uniquely difficult to try or involved novel questions of law. Moreover, while Plaintiff submitted supporting declarations from experienced civil rights litigators in the Eastern District of New York urging this Court to award Mr. Negron and Mr. Ausili a rate comparable to the $500-$600 per hour rate that they themselves have been awarded as counsel for prevailing parties under § 1988(b), it is clear to this Court that Plaintiff's counsel do not have comparable experience or reputation in this specialized field as compared to these declarants.

This conclusion is borne out by certain aspects of the litigation history of the case, which indicate that Plaintiff's counsel lacked the expertise, knowledge, and skill to effectively litigate some of the more complex aspects of Plaintiff's § 1983 claims. For example, counsel listed the Town as a defendant but failed to plead any particular theory of liability against the Town (under *Monell* or otherwise) in the complaint. *See generally* ECF No. 1. And when Defendants moved for summary

9

judgment (through prior counsel), Magistrate Judge Tomlinson, who granted the motion in part and denied it in part, decried the quality of both parties' submissions to the court. Regarding Plaintiff's submissions, Judge Tomlinson wrote that "Plaintiff's Rule 56.1 Statement (1) does not . . . respond to any of Defendants' assertions, (2) contains 21 assertions with only four which include citations to evidence in the record, and (3) includes multiple paragraphs which are actually arguments advanced by counsel—not factual averments." ECF No. 31 at 2–3.

Plaintiff's trial counsel also lacked critical expertise and knowledge regarding the interplay between his individual claims against Incagliato and his municipal claims against the Town and how it might impact their client's ultimate recovery. For example, when the parties rested, the Court informed the parties that it would grant Defendants' motion to dismiss Plaintiff's claims against the Town on Plaintiff's "failure to train" theory. Before the Court had the opportunity to issue its ruling on whether Plaintiff's remaining theory of *Monell* liability—that Incagliato was a "final policymaker," thus making the Town liable for his actions—Plaintiff's counsel immediately informed the Court that it would "withdraw" *all* his claims against the Town. Trial Transcript ("Tr.") 684:10–15. The Court then reminded Plaintiff's counsel that even if the jury returned a finding of liability against Incagliato, Defendants could still move under Fed. R. Civ. P. 50 to preclude entry of judgment against him on the grounds of qualified immunity—which, if the Court granted, would leave Plaintiff with *nothing*, notwithstanding any favorable jury verdict, since Plaintiff would not be able to collect any judgment against the

10

dismissed municipal defendant. Tr. 691:1–692:22. It was only at that point that Plaintiff's counsel conferred with one another and Mr. Negron informed the Court that they would "withdraw [their] withdrawal." Tr. 693:12. Counsel's misstep could have been disastrous for their client in light of the jury's subsequent factual determination (in response to the Court's special interrogatory) that Incagliato subjectively and "reasonably" believed that his search and condemnation of Plaintiff's home was lawful, which would have provided Incagliato with strong evidence in support of his qualified immunity claim.

Again, the Court does not outline this history to indicate that Mr. Negron performed poorly overall. He won his client a significant victory and was clearly the "prevailing party" under § 1988(b). Moreover, the Court disagrees with Defendants' assertion that Mr. Negron's fee must be reduced simply because his practice has focused largely on cases litigated in state rather than federal court—there is no special magic to federal court trial practice, and state court practitioners can generally advocate for their clients equally zealously in federal court. However, in light of this litigation's history, the Court concludes that Mr. Negron's and Mr. Ausili's litigation experience, reputation, and skill are comparable to other attorneys in the forum, but not to those attorneys with specialized skills and experience in civil rights litigation. The rate of $350 per hour, therefore, is appropriate both for Mr. Negron's and Mr. Ausili's time.

The Court also disagrees with Defendants that Mr. Ausili should be billed at the lower rate of $250. Although Mr. Ausili played a smaller role in this litigation

11

than Mr. Negron, Mr. Ausili has extensive experience in the Eastern District of New York, including as a career clerk for Judge Leonard Wexler, and has also served as Assistant Dean and an Adjunct Professor of Law at the Touro Law Center.  ECF No. 89-3 at 3.  He also agreed to serve as co-counsel on a contingency basis, taking time away from his practice with no guarantee of compensation.  That practice is to be encouraged by the Courts through a reasonable fee award where, as here, counsel's efforts help secure a jury verdict in Plaintiff's favor.

The Court turns now to its calculation of the hours that Plaintiff's counsel reasonably worked on Plaintiff's case.  The Court agrees with Defendants that certain tasks that Plaintiff has billed in this action—such as administrative chores and basic research—are tasks which should not be billed at a lead attorney's rate.  For example, Defendants noted that Plaintiff's counsel has billed for the time spent depositing Plaintiff's check satisfying the judgment in this case, but he did so at a proposed rate of $500 per hour.  The Court also agrees that counsel's billing records raise questions as to whether he has inflated his bills for certain tasks that he completed related to this action—such as billing 1.1 hours for a status conference that Defendants asserted lasted just a few minutes, ECF No. 90 at 16, an assertion which Plaintiff did not dispute in his supplemental brief.  In general, however, counsel's expenditures of time on tasks such as motion practice, witness preparation, and settlement negotiations (whether solely by Mr. Negron, or with the assistance of Mr. Ausili) were not unreasonable given the nature of the litigation.

The Court also disagrees with Defendants that Mr. Ausili, Mr. Negron's co-

counsel, provided little value to the case.  Rather, the Court concludes, as Plaintiff argues, that "it is not uncommon for multiple lawyers to work collaboratively on a civil rights case." ECF No. 89 at 16.  Indeed, co-counsel often offers significant benefits to a solo practitioner, and those hours which Mr. Ausili actually (and reasonably) worked in support of Plaintiff's case should be compensated accordingly.

In sum, the Court agrees with Defendants that the total hours for which Mr. Negron and Mr. Ausili seek to be compensated are not reasonable in light of the evidence that some of these time entries may have been inaccurate and some were billed at counsel's hourly rate for purely clerical or administrative tasks.  *See, e.g.*, *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 540 (S.D.N.Y. 2008) ("Under fee-shifting statutes, attorneys may not be compensated at their regular hourly rates for time spent performing clerical tasks.").  However, the record does not suggest that counsel's hours were so unreasonable or inaccurate as to justify a 30% to 40% reduction, as Defendants recommend.  Therefore, pursuant to the Court's discretionary authority to reduce the purported number of hours worked by a set percentage, rather than scrutinize Plaintiff's billing statements line-by-line, the Court reduces Mr. Negron's and Mr. Ausili's purported hours—amounting to 477.5 hours and 185.4 hours respectively[2]—by 10% across the board.

---

[2] These figures include the time that counsel spent in preparation for and during post-trial settlement discussions.  Although Defendants oppose a final calculation that includes these hours, that time was clearly productive in light of the fact that, the day after settlement discussions, the parties filed a satisfaction of

With this reduction, the Court therefore concludes that 596.61 hours, which represents 90% of the total hours claimed by Mr. Negron and Mr. Ausili, represents a reasonable award of hours worked in this five-year-old action. Multiplying this figure by Mr. Negron's and Mr. Ausili's $350 rate produces a total sum of $208,813.50. The Court therefore awards this amount, in addition to $1,674.93 costs, to Plaintiff under 42 U.S.C. § 1988(b), for a total award of $210,488.43.

SO ORDERED.

                                                                                                 /s/ NRM
                                                                                                 NINA R. MORRISON
                                                                                                  United States District Judge

Dated:       August 25, 2023
               Brooklyn, New York

---

judgment. ECF No. 97. Defendants argue that the Court's June 30, 2023 order technically said that it would assess Plaintiff's motion based on the briefs that the parties submitted "prior" to engaging in settlement discussions with Judge Dunst, ECF No. 99 at 1, yet the Court finds it unlikely that Defendants actually interpreted the Court's order in that way—after all, in the same order, the Court directed Defendants to reply to Plaintiff's post-settlement brief.